UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

TIMOTHY EUGENE ENGLAND,     )
    )
    Petitioner,     )
    )
v.     )     No. 2:19-CV-00151-JRG-CRW
    )
UNITED STATES OF AMERICA,     )
    )
    Respondent.     )

## MEMORANDUM OPINION

This matter is before the Court on Petitioner Timothy Eugene England's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody [Doc. 1], the United States' Response in Opposition [Doc. 8], Mr. England's Reply [Doc. 19], and Mr. England's Motion Requesting Evidentiary Hearing on Previously Filed Motion under § 2255 [Doc. 21]. For the reasons herein, the Court will deny Mr. England's motions.

### I.    BACKGROUND

On December 10, 2015, a masked man wearing a gray sweatsuit presented a bank teller with a handwritten note demanding money. The teller complied with his demand, filling his duffel bag with more than $19,000. A grand jury later indicted Petitioner Timothy Eugene England in connection with that robbery and a petit jury went on to find him guilty of (1) bank robbery by force or threat, in violation of 18 U.S.C. § 2113(a) and (d); (2) knowingly using, carrying, and brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii); (3) attempted escape from custody, in violation of 18 U.S.C. § 751(a); and (4) escape from custody, in violation of 18 U.S.C. § 751(a). [Verdict Forms, Docs. 102 & 103, 2:16-CR-00065-1-JRG-DHI]. The Court sentenced him to 300 months' imprisonment, which it

ordered to run consecutively to any sentence that it imposed in his then-pending revocation proceedings.[1] Mr. England has now filed a timely motion under 28 U.S.C. § 2255, in which he claims that his attorney rendered ineffective assistance of counsel both before and during his trial. The United States opposes his motion. Having carefully considered Mr. England's claims and the parties' arguments, the Court is now prepared to rule on them.

## II. STANDARD OF REVIEW

Under § 2255, "[a] prisoner in custody under sentence of a [federal] court . . . claiming the right to be released . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). A court must vacate and set aside a sentence if it concludes that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." *Id.* § 2255(b). To warrant relief for a denial or infringement of a constitutional right, a petitioner has to establish an "error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)). To warrant relief for a non-constitutional claim, a petitioner must establish that a fundamental defect in the proceeding resulted in a complete miscarriage of justice or an egregious error that deprived him of "the rudimentary demands of fair procedure." *Reed v. Farley*, 512 U.S. 339, 354 (1994); *see Grant v. United States*, 72 F. 3d 503, 505–06 (6th Cir. 1996).

---

[1] In the revocation proceedings against Mr. England—who was on supervised release when he perpetrated the bank robbery—the United States claimed that he had violated the terms of his supervision by committing the robbery and possessing a firearm. During Mr. England's revocation hearing, the Court found that he had violated the terms of supervision and sentenced him to eleven months and twenty-nine days' imprisonment. [J., Doc. 61, at 3, 3:12-CR-00028-JRG-MCLC]. Mr. England, in pursuing relief under 28 U.S.C. § 2255, does not raise any appreciable challenge to this sentence.

Case 2:16-cr-00065-JRG-DHI   Document 151   Filed 09/30/22   Page 2 of 29   PageID #: 3971

In sum, "[a] prisoner seeking relief under § 2255 'must allege as a basis for relief: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (quotation omitted). In support of one of these three bases for relief, a petitioner's allegations must consist of sufficient facts showing she is entitled to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972). "Generally, courts have held that 'conclusory allegations alone, without supporting factual averments, are insufficient to state a valid claim under § 2255.'" *Jefferson v. United States*, 730 F.3d 537, 547 (6th Cir. 2003) (quotation and citation omitted). And similarly, if "the motion and the files and records of the case conclusively show that the prisoner is entitled to doc.no relief," she will not receive an evidentiary hearing. *Smith v. United States*, 348 F.3d 545, 550 (6th Cir. 2003) (quoting *Fontaine v. United States*, 411 U.S. 213, 215 (1973)).

A petitioner has the burden of proving that "an error has occurred that is sufficiently fundamental to come within" one of the three "narrow limits" for § 2255 relief. *United States v. Addonizio*, 442 U.S. 178, 185 (1979); *see Pough*, 442 F.3d at 964. The standard that governs collateral review under § 2255, as opposed to direct review on appeal, is significantly higher. *United States v. Frady*, 456 U.S. 152, 162–66 (1982); *see Hampton v. United States*, 191 F.3d 695, 698 (6th Cir. 1999) ("Habeas review is an extraordinary remedy and 'will not be allowed to do service for an appeal.'" (quoting *Reed*, 512 U.S. at 354)). This is so because "[t]he reasons for narrowly limiting the grounds for collateral attack on final judgments are well known and basic to our adversary system." *Addonizio*, 442 U.S. at 184 (footnote omitted); *see Custis v. United States*, 511 U.S. 485, 497 (1994) ("'[I]nroads on the concept of finality tend to undermine confidence in the integrity of our procedures' and inevitably delay and impair the orderly

3

administration of justice." (quotation omitted)); *Parke v. Raley*, 506 U.S. 20, 29 (1992) (referring to a "presumption deeply rooted in our jurisprudence: the 'presumption of regularity' that attaches to final judgments" (quotation omitted)).

### III. ANALYSIS

Mr. England raises multiple claims of ineffective assistance of counsel. First, he argues that his trial attorney was ineffective because he "failed to prepare adequately." [Pet'r's Mot. at 14]. Second, he maintains that his trial attorney was ineffective because he failed "to object to prosecutions [sic] questioning and evidence presented." [*Id.* at 15]. Third, he claims that his trial attorney was ineffective because he failed "to call and examine witnesses." [*Id.*]. Fourth, he contends that his trial attorney was ineffective because he failed to "review available discovery, investigators [sic] file and present information favorable to [him] to the jury." [*Id.* at 17]. Fifth, he asserts that his trial attorney was ineffective because he failed "to obtain certain expert and investigative assistance." [*Id.* at 19]. And sixth, he claims that his trial attorney was ineffective because he "fail[ed] to impeach." [*Id.* at 21]. On the whole, Mr. England maintains that his attorney's alleged errors culminated in the violation of his due-process rights. [*Id.*]. In response, the United States asserts that Mr. England's claims do not justify relief under § 2255 because they are conclusory and otherwise fail on the merits. [United States' Resp. at 6–12].

### A. Ineffective Assistance of Counsel

The Sixth Amendment states that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." This right is the right not merely to representation but to *effective* representation. *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970). When a petitioner contests his sentence by raising the specter of ineffective assistance of counsel, he normally can succeed only by satisfying the familiar *Strickland* test, a two-pronged

4

test that requires a showing of deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). To establish deficient performance, a petitioner must show that his counsel, through the prism of an objective standard of reasonableness, "made errors so serious that counsel was not functioning as the 'counsel' guaranteed" by the Sixth Amendment. *Id.* at 687. And to establish prejudice, a petitioner must demonstrate that his counsel's deficient performance was so serious that it deprived him of his fundamental right to due process, *id.*, or in other words, "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694.[2] A court has license to address the two prongs of the bipartite test in any order, and if a petitioner fails to establish either prong of this test, his claim of ineffective assistance of counsel fails. *Id.* at 697.

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010) (citations omitted). Indeed, "[c]ounsel's performance is strongly presumed to be effective." *Jones v. Bell*,  801 F.3d 556, 562 (6th Cir. 2015) (quotation omitted); *see Thelen v. United States*, 131 F. App'x 61, 63 (6th Cir. 2005) ("A deferential standard of review applies to ineffective assistance claims. A defendant must show that counsel's representation was so 'thoroughly ineffective that defeat was 'snatched from the jaws of victory.'" (quoting *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996))); *see also Strickland*, 466 U.S. at 689 ("Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." (citation omitted)). Even if a particular aspect of counsel's performance proves to be deficient, that deficiency "does not warrant setting aside the

---

[2] "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

judgment of a criminal proceeding" unless it has a prejudicial effect on the judgment. *Strickland*, 466 U.S. at 691 (citation omitted).

### 1. Failure to Prepare Adequately

Mr. England, in alleging that his attorney was ineffective because he failed to adequately prepare, raises a twofold argument. First, he alleges that his attorney "fail[ed] to provide any guidance or direction to [the] jury in his opening statement and failed to object to inflammatory portions of prosecution opening statement." [Def.'s Mot. at 14]. Second, he alleges that his attorney "failed to develope [sic] and communicate a theory of defense and how such a theory would infer innocence on [him]." [*Id.*].

To begin with, Mr. England's allegations are, as the United States correctly contends, purely conclusory—a defect that is in and of itself fatal to his claims. *See Jefferson*, 730 F.3d at 547 ("[C]ourts have held that 'conclusory allegations alone, without supporting factual averments, are insufficient to state a valid claim under § 2255.'" (quotation and citation omitted)). He does not identify the "guidance or direction" that his attorney allegedly failed to provide to the jury in his opening statement or state how it rose to the level of a due-process violation. He does not identify the "inflammatory portions" of the United States' opening statement that his attorney allegedly did not to object to. And he does not identify the "theory of defense" that his attorney allegedly did not communicate to the jury or state how it ascends to the level of a due-process violation. His cadaverous allegations leave the Court unable to determine whether the arguments and objections that his attorney allegedly failed to raise during opening statements constitute deficient performance. *See Mapes v. Coyle*, 171 F.3d 408, 427 (6th Cir. 1999) (stating that "[c]ounsel could not be unconstitutionally ineffective for failing to raise [a] meritless argument"); *see also Thomas v. McKee*, 571 F. App'x 403, 408 (6th Cir. 2014) ("The lawyer's

6

failure to object to legitimate statements by the prosecution [during opening statements] does not constitute the kind of error that is 'so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment.'" (quoting *Strickland*, 466 at 687)).

His allegations, therefore, are insufficient to overcome the strong presumption that his attorney was in fact effective during trial. Indeed, the Court must presume that Mr. England's attorney had a strategic, legally sound reason, or reasons, for crafting and presenting his opening statement in the way that he did, even if Mr. England, after the fact, now disagrees with it. *See Millender v. Adams*, 187 F. Supp. 2d 852, 870 (E.D. Mich. 2002) ("The timing of an opening statement, and even the decision whether to make one at all, is ordinarily a mere matter of trial tactics and in such cases will not constitute the incompetence basis for a claim of ineffective assistance of counsel." (quoting *United States v. Rodriguez-Ramirez*, 777 F.2d 454, 457 (9th Cir. 1985))); *see also United States v. Hurley*, 10 F. App'x 257, 260 (6th Cir. 2001) ("The tactical decisions of trial counsel are particularly difficult to attack, and a defendant's challenge to such decisions must overcome a presumption that the challenged action might be considered sound trial strategy." (citation omitted)); *Morrice v. Jackson*, No. 1:18-cv-1398, 2022 WL 969677, at *1 (W.D. Mich. Mar. 31, 2022) ("Even though Petitioner disagrees with his counsel's strategy now, a difference in opinion after the fact is not enough to support a claim of ineffective assistance of counsel." (footnote omitted) (citing *Strickland*, 466 U.S. at 690))); *Carson v. United States*, No. 1:17 CR 00008, 2022 WL 845478, at *5 (N.D. Ohio Mar. 22, 2022) ("Courts are highly deferential to the trial strategy of lawyers, and [the petitioner] cannot establish ineffective assistance of counsel by simply disagreeing with [his attorney's] tactical choices." (citing *Strickland*, 466 U.S. at 689)); *Kelly v. Smith*, No. 5:17-cv-437-KKC, 2019 WL 2189511, at *12 (E.D. Ky. May 21, 2019) ("To show that [the petitioner's] counsel's performance was objectively

7

unreasonable, a petitioner must rebut the strong presumption that the challenged conduct could be considered sound trial strategy under the circumstances. A reasonable tactical decision by counsel with which the defendant disagrees cannot form a basis for an ineffective assistance of counsel claim." (citing *Strickland*, 466 U.S. at 688; *Guam v. Santos*, 741 F.2d 1167, 1169 (9th Cir. 1984))). The Court will not, and cannot, "second-guess" those reasons in the absence of substantive allegations that cast a pall of unreasonableness over them. *Strickland*, 466 U.S. at 689.

Simply, when an attorney "act[s] as an advocate for [a] defendant" during an opening statement—by, for example, "emphasiz[ing] the burden of proof" or "press[ing] [the] defendant's case," *Campbell v. United States*, 364 F.3d 727, 733 (6th Cir. 2004), his opening statement, even if it is "not as eloquent as it could have been," is not constitutionally ineffective, *id.*; *see United States v. Cronic*, 466 U.S. 648, 659 (1984) (recognizing that counsel is effective so long as he "subject[s] the prosecution's case to meaningful adversarial testing"). Mr. England does not allege that his attorney failed to mention the applicable burden of proof, failed to press his case, or failed altogether to provide an adversarial position against the United States' case. The Court therefore cannot conclude that his attorney, during his opening statement, "made errors so serious that [he] was not functioning as the 'counsel' guaranteed" by the Sixth Amendment. *Strickland*, 466 U.S. at 687.

Similarly, Mr. England's claim also fails because he does not plead that his attorney's alleged conduct during opening statements prejudiced him, or in other words, that his conduct was so serious that it would have created the reasonable probability of a different outcome in his trial. *See Moss v. Hofbauer*, 286 F.3d 851, 864 (6th Cir. 2002) ("[The petitioner's] conclusory allegations are insufficient to justify a finding that an opening statement would have created the

reasonable probability of a different outcome in his trial."). Even when an attorney commits an error during trial, it is not necessarily prejudicial to the defendant, *see Strickland*, 466 U.S. at 693 ("[N]ot every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding."), and a petitioner's dissatisfaction with the content of his attorney's opening statement—or even the outright absence of an opening statement—is not by itself indicative of an issue that is presumptively prejudicial, *see Hughes v. United States*, 258 F.3d 453, 457 (6th Cir. 2001) ("A strategic decision cannot be the basis for a claim of ineffective assistance unless counsel's decision is shown to be so ill-chosen that it permeates the entire trial with obvious unfairness." (citation omitted)); *see also United States v. Kortright*, No. 99-1225, 2000 WL 232291, at *1 (2d Cir. Jan. 25, 2000) ("Here, [the petitioner's] objections to defense counsel's performance focus on . . . the content of counsel's opening statement . . . . [The petitioner] cannot succeed in his claim, however, because displeasure with defense counsel's trial strategy is not sufficient to establish ineffectiveness[.]" (citation omitted)); *Mobley v. Kirkpatrick*, 778 F. Supp. 2d 291, 313–14 (W.D.N.Y. 2011) ("The decision as to whether to make an opening statement, and its scope, is a matter of trial strategy." (citing *id.*)). In sum, Mr. England fails to satisfy either prong of *Strickland*'s two-part test, and his claim of ineffective assistance of counsel therefore does not entitle him to the extraordinary remedy of § 2255 relief.

## 2. Failure to Object to the Teller's Testimony about Handwriting

Next, Mr. England maintains that his attorney was ineffective for failing to object to the bank teller's opinion that the handwriting on a trial exhibit resembled the handwriting on the demand note that the robber handed to her during the robbery. [Pet'r's Mot. at 15; *see* Trial Tr., Doc. 124, at 19:11–21]. In Mr. England's view, the teller was not "an expert on analyzing handwriting" and therefore "should not have been asked nor given an opportunity to state such

an opinion." [Pet'r's Mot. at 15]. In response, the United States argues that Mr. England's claim is baseless because Federal Rule of Evidence 701 authorized the teller to testify about what similarities, if any, the handwriting on the demand note shared with the handwriting on the trial exhibit. [United States' Resp. at 10].[3] Mr. England's claim is indeed baseless.

Because the teller was familiar with the handwriting on the demand note, *see* [Trial Tr. at 14:12–25], she was free to testify as to whether that handwriting did or did not resemble the handwriting on the trial exhibit; she was under no requirement to be an expert in handwriting. *See United States v. Phelps*, No. 20-5889, 2021 WL 4315947, at *3 (6th Cir. Sept. 23, 2021) (stating that Rule 701 and Rule 901 "create considerable latitude when it comes to allowing nonexperts to testify about handwriting and the like," so long as "[t]he relevant witnesses had ample knowledge to offer this testimony" (citing *United States v. Harris*, 786 F.3d 443, 446–47 (6th Cir. 2015))); *United States v. Reynolds*, No. 3:08-CR-143, 2010 WL 2103227, at *5 (E.D. Tenn. May 21, 2010) ("[C]ourts routinely permit the admission of a lay witness's handwriting testimony upon a showing that the witness was familiar with the writer's handwriting." (citing *United States v. Carriger*, 592 F.2d 312, 315 (6th Cir. 1979))). Mr. England's attorney therefore had no valid legal basis to object to the teller's testimony and could not have been ineffective for failing to object to it. *See Mapes*, 171 F.3d at 427 ("Counsel could not be unconstitutionally ineffective for failing to raise [a] meritless argument."); *see also Chapman v. United States*, 74 F. App'x 590, 593 (6th Cir. 2003) (stating that an attorney "is not required by the constitution to raise frivolous defenses or arguments to avoid a charge of ineffective representation"). Also, Mr. England does attempt to allege that he suffered prejudice from the admission of the teller's

---

[3] Rule 701 states that when a witness is not testifying as an expert, her testimony as to an opinion is permissible so long as it is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."

testimony about the handwriting. He therefore fails to satisfy both prongs of the *Strickland* test, as with his previous claim.

### 3. Failure to Object to Testimony about the Black Crown Victoria

Mr. England also contends that his attorney was ineffective because he did not object "each time the 'Black Crown Vic' was referred to as the car used in the robbery." [Pet'r's Mot. at 15]. According to Mr. England, his attorney should have objected to each reference to the black Crown Victoria because it "was multiple times said to have been used but this claim was never substantiated." [*Id.*]. But as the United States points out, Josh Waddell, an eyewitness of the robbery, testified that he saw the robber run out of the credit union and stand beside a car that the thought was a black Crown Victoria. [United States' Resp. at 10]; *see* [Trial Tr. at 34:4–25, 35:1–25, 36:1–25, 37:1–25, 38:1–7].

Mr. Waddell's testimony *is* evidence, or, as Mr. England phrases it, "substantiat[ion]," showing that the robber drove a black Crown Victoria, and the jury was free to believe, or draw any reasonable inferences from, Mr. Waddell's testimony. *See United States v. Johnson*, No. 97-2164, 1999 WL 357826, at *1 (6th Cir. May 26, 1999) ("[The defendant] complains that all of [the government's witnesses'] testimony was self-serving, incredible and otherwise unreliable. Whatever its weaknesses, however, this testimony is evidence pointing to guilt."). Besides, Mr. England's attorney *did* in fact object to Mr. Waddell's testimony about the black Crown Victoria, arguing that it was speculative, [Trial Tr. at 37:19–20], so Mr. England's claim fails not only on the merits but also because he has a mistaken account of the record. And, as before, Mr. England also does not allege prejudice. He therefore fails to satisfy the *Strickland* test.

4. Failure to Call and Witnesses

Next, Mr. England claims that his attorney was ineffective because he failed to call two witnesses: William Lusk, from whom, according to testimony at trial, he purchased the black Crown Victoria, [Trial Tr. at 90:11–17, 182:9–25, 183:1], and Falicia Shrewsbury, who, Mr. England appears to argue, could have presented testimony about the black Crown Victoria that would have been favorable to him, [Pet'r's Mot. at 16–17]. In response, the United States, first, asserts that Mr. England's claim fails because his attorney's decision about which witnesses to call is "quintessentially a matter of trial strategy" and Mr. England fails to overcome the strong presumption that his attorney's decision not to call Mr. Lusk and Ms. Shrewsbury was sound trial strategy. [United States' Resp. at 11]. And second, the United States contends that Mr. England's claim fails because he has not filed affidavits specifying the details of what Mr. Lusk and Ms. Shrewsbury would have testified to. [*Id.* at 10]. The United States is correct in both respects.

"The decision whether to call a witness to testify at trial is a matter of strategy that falls squarely within defense counsel's domain," *Javaherpour v. United States*, Nos. 4:04-cv-38, 4:01-cr-11, 2007 WL 1041266, at *3 (E.D. Tenn. Apr. 6, 2007), and for this reason, "[a] defense counsel has no obligation to call or even interview a witness whose testimony would not have exculpated the defendant," *Millender v. Adams*, 376 F.3d 520, 527 (6th Cir. 2004) (quotation omitted); *see Caldwell v. Lewis*, 414 F. App'x 809, 815–16 (6th Cir. 2011) ("[A]n attorney's failure to present available *exculpatory* evidence is ordinarily deficient, unless some cogent tactical or other consideration justified it." (emphasis added) (quotation and citations omitted))). Mr. England does not allege that either Mr. Lusk's or Ms. Shrewsbury's testimony would have exculpated him of the offenses with which he was charged. Instead, he suggests only that Mr.

Lusk is a witness who would have been impeachable. *See* [Petr's Mot. at 16 (claiming that he should have had the right to "test" Mr. Lusk's "integrity" because he "has a criminal history" and "reported drug use"). And similarly, Mr. England, at most, intimates that Ms. Shrewsbury's testimony would have impeached the testimony of one or more of the United States' witnesses, perhaps including Mr. Waddell. *See* [*id.* at 16–17 (maintaining that Ms. Shrewsbury's testimony would have "substantiated" his theory of the case and that, without her testimony, the jury was left to "believe" the United States' theory of the case)]; *compare United States v. Crayton*, 357 F.3d 560, 568 (6th Cir. 2004) (stating that "explicitly exculpatory" evidence is evidence that "tend[s] to negate directly the guilt of the defendant"), *with Kelley v. Burton*, 792 F. App'x 396, 397 n.1 (6th Cir. 2020) (stating that "impeachment evidence" is "evidence undermining witness credibility" (citation omitted)); *see United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1988) (stating that exculpatory evidence is evidence "going to the heart of the defendant's guilt or innocence," while impeachment evidence is evidence that has "the potential to alter the jury's assessment of the credibility of a significant prosecution witness" (citations omitted)).

In addition, Mr. England has not provided the Court with supporting affidavits from Mr. Lusk or Ms. Shrewsbury, or stated whether they were available to testify in the first place. *See Talley v. United States*, Nos. 1:00-cv-74, 1:94-cr-118, 2006 WL 3422997, at *9, 10 (E.D. Tenn. Nov. 27, 2006) ("To present a viable ineffective assistance of counsel claim based upon an alleged failure by counsel to call a witness to testify at trial, [the petitioner] must make an affirmative showing as to  the . . . availability of the witness to testify, the details of what the uncalled witness would have testified to, and that the testimony of the uncalled witness would have produced a different, more favorable result at trial. . . . The Court will not grant any § 2255 relief to [the petitioner] or hold an evidentiary hearing based on the purported potential testimony of uncalled

witnesses where [the petitioner] has not bothered to submit supporting affidavits from them." (citations omitted)).

In sum, Mr. England fails to allege facts demonstrating that his attorney was ineffective for failing to call Mr. Lusk or Ms. Shrewsbury, and as before, he also does not allege prejudice of any kind. *See Dibble v. United States*, 103 F. App'x 593, 596 (6th Cir. 2004) (affirming the district court's denial of the petitioner's § 2255 motion when the petitioner failed to "identify any prejudice that she suffered as a result of" counsel's failure to call a character witness). At the risk of belaboring the issue, the Court again emphasizes that Mr. England's attorney "is strongly presumed to have rendered adequate legal assistance, and to have made all decisions in the exercise of reasonable professional judgment and sound trial strategy," *Talley*, 2006 WL 3422997 at *10 (citing *Nix v. Whiteside*, 475 U.S. 157, 165 (1986); *Strickland,* 466 U.S. at 689-90))), and Mr. England's "bare allegations of uncalled witnesses are [insufficient]" to defeat this presumption, *Brain v. United States*, Nos. 4:03–cr–38, 4:08–cv–71**,** 2011 WL 1343344, at *6 (E.D. Tenn. Apr. 8, 2011). Mr. England, therefore, falls well short of satisfying *Strickland*'s two-part test.

### 5. Failure to Examine Witnesses

Mr. England also claims that his attorney was ineffective for failing to cross examine certain witnesses, Kevin Ford and Bianca Pearson, both of whom are federal agents.[4] According to Mr. England, his attorney, in failing to cross examine these witnesses, was presumptively deficient in his representation. *See* [Pet'r's Mot. at 17 (claiming that his attorney's failure to

---

[4] Mr. England, in his reply brief, claims for the first time that his attorney was also ineffective for failing to cross examine his ex-wife, but because he raises this claim for the first time in his reply brief, he has forfeited it. *See Ryan v. Hazel Park*, 279 F. App'x 335, 339 (6th Cir. 2008) ("Generally, this Court has found that an issue raised for the first time in a reply to a response brief in the district court is waived."); *see also Laughlin v. United States*, No. 20-5433, 2020 WL 9423256, at *2 (6th Cir. Oct. 28, 2020) ("[The petitioner] raised this claim for the first time in a reply to a response before the district court. The claim was thus forfeited." (citing *id.*)).

14

cross examine Agent Ford and Agent Pearson "cannot be supported by any type of defense strategy" and that his attorney "abandoned his responsibilities to his client")]. In response, the United States contends that Mr. England's attorney's decision not to cross examine Agent Ford and Agent Pearson is not deficient because that decision is one of trial strategy. [United States' Resp. at 11].

Contrary to Mr. England's assertion, his attorney's decision not to cross examine Agent Ford and Agent Pearson is not per se deficient performance. "Courts generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel." *Jackson v. Bradshaw*, 681 F.3d 753, 765 (6th Cir. 2012) (quotation omitted); *see United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987) ("Decisions whether to engage in cross-examination, and if so to what extent and in what manner, are . . . strategic in nature."). Generally, an attorney's decision not to cross examine a witness does not amount to deficient performance unless it "entirely fails to subject the prosecution's case to meaningful adversarial testing." *Cronic*, 466 U.S. at 659. For example, the Sixth Circuit has held that an attorney's assistance is ineffective when he fails to cross examine "the prosecution's only eyewitness to the crime," *Higgins v. Renico*, 470 F.3d 624, 633 (6th Cir. 2006), fails to cross examine a witness when that witness "was the only plausible hope [the defendant] had for acquittal," *Blackburn v. Foltz*, 828 F.2d 1177, 1183 (6th Cir. 1997), and leaves the courtroom and relies on his co-defendant's counsel to perform the cross examination of a key witness, *Green v. Arn*, 809 F.2d 1257, 1261–64 (6th Cir. 1987). Mr. England does not allege that any of these scenarios applies here, and he does not cite any case law at all to support his claim. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to

mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (quotation omitted)). Instead, he alleges, in conclusory fashion, only that his attorney's decision not to cross examine Agent Ford and Agent Pearson "cannot be supported by any type of defense strategy." [Pet'r's Mot. at 11].

This conclusory allegation is hardly sufficient to defeat the strong presumption that his attorney's decision to forego cross examination of these witnesses was sound trial strategy. The United States, for example, posits a perfectly objectively reasonable basis for this decision:

> [Mr. England] overlooks the possibility that such questioning would have allowed the investigators to underscore their certainty that they had correctly identified England as the bank robber based on the totality of the evidence. It is not unreasonable for defense counsel to decline to elicit testimony reiterating the evidence *against* England.

[United States' Resp. at 11]. Indeed, cross examination is not "a science" and is not appropriate in every instance. *Strickland*, 466 U.S. at 681 (citation omitted). In this vein, the Sixth Circuit, like the United States here, has acknowledged that cross examination may, in some instances, actually prove *harmful* to a defendant's case:

> It is a difficult task for a court to attempt to tell experienced defense counsel *how* to defend their clients—particularly with respect to cross-examination and trial tactics. . . . [C]ross-examination [is] a sharp two-edged sword *and more criminal cases are won by not cross-examining adverse witnesses*, or by a very selective and limited cross-examination of such witnesses, than are ever won by demolishing a witness on cross-examination. . . . [C]ross-examination very frequently operates to emphasize the critical points in a witness' testimony, and *although it may initially be helpful to the defense in some instances, points on cross-examination can usually be answered and discrepancies explained in favor of the prosecution by re-direct examination.*

*Glenn v. Sowders*, No. 85-5754, 1986 WL 18475, at *4–5 (6th Cir. Dec. 8, 1986) (emphasis added) (quoting *United States v. Clayborne*, 509 F.2d 473, 479 (D.C. Cir. 1974))); *see Warner v. Ford*, 752 F.2d 622, 625 (11th Cir. 1985) ("Silence can constitute trial strategy.").

16

In short, Mr. England's conclusory allegation that his attorney's decision was per se deficient is entirely insufficient to overcome the presumption that this decision "could be considered sound trial strategy." *Hurley*, 10 F. App'x at 260; *see Strickland*, 466 U.S. at 681 ("[S]trategic choices must be respected . . . if they are based on professional judgment." (citation omitted)). With this broad-based allegation, Mr. England wrongly assumes that *every* decision by an attorney not to cross examine a government witness is a constitutional violation, but this is simply not true. *See, e.g.*, *Glenn*, 1986 WL 18475 at *5 (holding that an attorney's failure to cross examine three of the prosecution's key witnesses, including one of the detectives who investigated the case, did not constitute deficient performance); *United States v. Bevington*, No. C-3-89-406, CR-87-89-1, 1990 WL 1016526, at *2 (S.D. Ohio May 17, 1990) ("Defendant first asserts that his counsel's . . . failure to cross examine more than ten of the government's twenty-one witnesses render counsel's assistance deficient. Defendant does not articulate a bona fide defense that his counsel bypassed, nor does he articulate why counsel's failure to cross-examine additional witnesses was unreasonable. . . . [T]he failure to cross examine government witnesses [does not], per se, render counsel's assistance ineffective. Defendant has not demonstrated that counsel's action were unreasonable and not simply 'matters of trial strategy.'" (footnote omitted) (internal citations and quotation omitted))).

Even if Mr. England had adequately alleged that his attorney's failure to cross examine Agent Ford and Agent Pearson was deficient, his claim would still lack merit because he does not allege or demonstrate prejudice. Again, to demonstrate prejudice, Mr. England must show that his attorney's failure to cross examine these witnesses would have created the reasonable probability of a different outcome at trial. *Strickland*, 466 U.S. at 694. To make this showing, he must establish that his attorney's cross examination of these witnesses would have "created

17

the likelihood of acquittal necessary to undermine confidence in the jury's verdict." *Wingate v. United States*, 969 F.3d 251, 257 (6th Cir. 2020) (citing *Strickland*, 466 U.S. at 693–94). In other words, he must show that "the totality of the evidence before the . . . jury" only "weakly supported" the verdict against him and that, therefore, his attorney's cross examination of Agent Ford and Agent Pearson would have likely changed the jury's mind. *United States v. Dado*, 759 F.3d 550, 563 (6th Cir. 2014) (quoting *Strickland*, 466 U.S. at 695–96).

Mr. England, however, makes no attempt at this showing, and nor can he because the record, as the United States illustrates in its response, contains copious, if not overwhelming, evidence undergirding the jury's guilty verdict, including evidence placing him at the robbery and tying his vehicle to the robbery, *see* [United States' Resp. at 8]; *see also Wingate*, 969 U.S. at 256–57 ("The jury watched the bank's security footage that, along with other corroborating testimony, already placed [the petitioner] and his minivan at the bank during the robbery. Considering 'the totality of the  evidence before the . . . jury, even a rigorous cross-examination of these witnesses could not have created the likelihood of acquittal necessary to undermine confidence in the jury's verdict." (internal quotation omitted) (citing *Strickland*, 466 U.S. at 693–94))). Mr. England therefore fails to satisfy *Strickland*'s two-part test, and he is not entitled to the extraordinary remedy of § 2255 relief.

### 6.  Failure to Review Discovery and Investigate

Mr. England goes on to argue that his attorney was also ineffective for failing to review and investigate his case through discovery. [Pet'r's Mot. at 17–19]. The Sixth Amendment's guarantee of effective assistance of counsel "applies to pretrial critical stages," *Lafler v. Cooper*, 566 U.S. 156, 165 (2012), and a defense attorney "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary," *Kimmelman*

18

*v. Morrison*, 477 U.S. 365, 385 (1986) (quotation omitted). If a defense attorney "neither investigated, nor made a reasonable decision not to investigate, the [prosecution's] case through discovery," "[s]uch a complete lack of pretrial preparation puts at risk both the defendant's right to an 'ample opportunity to meet the case of the prosecution,' and the reliability of the adversarial testing process." *Id.* (internal quotation and citation omitted). A defense attorney's decision not to fully investigate a case will be reasonable "only to the extent that 'reasonable professional judgments support the limitations on investigations.'" *Wiggins v. Smith*, 539 U.S. 510, 533 (2003) (quotation omitted).

In determining the reasonableness of an attorney's decision not to fully investigate a case, the Court must consider "all of the circumstances," *Moss v. Olson*, 699 F. App'x 477, 482 (6th Cir. 2017) (citing *id.*), including "the quantum of evidence already known to counsel" and "whether the known evidence would lead a reasonable attorney to investigate further," *Wiggins*, 539 U.S. at 527. The Court, however, all the while "appl[ies] a heavy measure of deference to counsel's judgments." *Jackson v. Warden*, 622 F. App'x 457, 461–62 (6th Cir. 2015) (quoting *Strickland*, 466 U.S. at 691); *see Rompilla v. Beard*, 545 U.S. 374, 383 (2005) ("[R]easonably diligent counsel may draw a line when they have good reason to think further investigation may be a waste." (citations omitted)); *see also Wiggins*, 539 U.S. at 525 (noting that further investigation is excusable when an attorney has evidence suggesting that it would be fruitless); *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (concluding that an attorney's decision "not to mount an all-out investigation into petitioner's background" was reasonable because every witness he interviewed provided predominantly harmful information about the petitioner); *Strickland*, 466 U.S. at 699 (determining that counsel had "reasonably surmise[d] . . . that character and psychological evidence would be of little help").

19

Mr. England, in contending that his attorney failed to fully investigate his case, raises a twofold argument. First, he maintains that his attorney failed to review "phone calls and video visits" that Mr. England had with his ex-wife and daughter—both of whom testified as witnesses for the United States at trial—and that they contained impeachment material that would have exposed "inconsistencies and deception" in their testimonies. [Pet'r's Mot. at 18]. Second, he asserts that his attorney failed to review federal agents' investigative files, which, he claims, would have shown that federal agents had been investigating other suspects. [*Id.*]. The United States offers a lackadaisical response to Mr. England's two arguments, contending that Mr. England's claim fails because he "has not identified any specific information that counsel failed to consider, nor any information that, if further investigated by counsel, might have altered the outcome of the case," [United States' Resp. at 7], but this contention is true only to an extent.

### i. *Phone Calls and Video Visits*

The United States is correct that Mr. England's allegations as to his attorney's failure to review phone calls and videos are far too conclusory to establish deficient performance, for the simple fact that Mr. England fails to identify the content of the impeachment material at issue. *See Johnson v. Burt*, No. 20-1760, 2020 WL 6588631, at *3 (6th Cir. Nov. 9, 2020) ("For his remaining ineffective assistance claims, [the petitioner] makes conclusory allegations regarding the impeachment evidence . . . and reasonable jurists could not disagree with the district court's conclusion that [the petitioner] was not prejudiced by any failure of his counsel to investigate and present this evidence"); *cf. Jimenez v. United States*, No. 5:13-CR-00045-TBR-LLK, 2018 WL 3018218, at *2 (W.D. Ky. Mar. 22, 2018) ("Speculative or conclusory allegations that the government file may have contained exculpatory or impeachment evidence does not support a *Brady/Giglio* claim." (citation omitted)). Because Mr. England fails to identify the impeachment

material in the calls and videos, the Court cannot possibly determine whether it undermines the credibility of his ex-wife's and daughter's testimonies and whether Mr. England's attorney acted unreasonably in failing to raise it at trial. *See Mapes*, 171 F.3d at 427 ("Counsel could not be unconstitutionally ineffective for failing to raise [a] meritless argument."); *see also Chapman*, 74 F. App'x at 593 (stating that an attorney "is not required by the constitution to raise frivolous defenses or arguments to avoid a charge of ineffective representation").

Besides, Mr. England's daughter's direct examination shows that the United States never broached the alleged calls and videos between her and Mr. England, so even if Mr. England's attorney had reviewed their contents, he would have had no valid legal basis to raise them on cross examination. *See Houghton v. Jones*, 68 U.S. 702, 706 (1863) ("The rule has been long settled, that the cross-examination of a witness must be limited to the matters stated in [the] direct examination."). In addition, Mr. England's attorney cross examined Mr. England's ex-wife and compelled her to admit that she did not believe that Mr. England committed the robbery and that the timeline did not fit. [Trial Tr. at 107:3–24]. In light of this testimony, the Court questions whether his attorney's decision not to elicit impeachment testimony about the calls and videos harmed his defense in any way. *See Strickland*, 466 U.S. at 693 ("Attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. . . . Even if a defendant shows that particular errors of counsel were unreasonable, therefore, the defendant must show that they actually had an adverse effect on the defense."). In sum, Mr. England's allegations do not satisfy *Strickland*'s two-part test because they are too conclusory to establish deficient performance and are insufficient to establish prejudice.

ii. *Federal Agents' Files*

Mr. England, however, also contends that his attorney failed to review federal agents' investigative files, which, he says, would have revealed that they had been investigating other suspects, one of whom was John R Jarling. [Pet'r's Mot. at 18]. According to Mr. England, Mr. Jarling "committed several bank robberies in Tennessee using a skull mask,"[5] "was in the area of the bank robbery in Greeneville" on the date of that robbery, and was ultimately arrested in Oklahoma. [*Id.*; *see* ROCIC E-mail, Doc. 19-1, at 30]. Mr. England contends that his attorney's failure to review and investigate the information relating to Mr. Jarling deprived him of the chance to present "information favorable to [him] to the jury." [*Id.* at 17]. His allegations as to Mr. Jarling are not conclusory, despite the United States' contention otherwise. *See Phillips v. Hoffner*, 755 F. App'x 481, 494 (6th Cir. 2018) (acknowledging "a line of Supreme Court cases finding deficient performance where 'evidence in the record suggested fruitful leads that a reasonable attorney would have pursued'" (quotation omitted)).

But even so, Mr. England has provided the Court with no evidence showing that his attorney rendered deficient performance by failing to investigate the federal agents' files and to espouse a theory, as a trial strategy, that Mr. Jarling was the robber. In other words, he makes no attempt to rebut the strong presumption that his attorney acted reasonably. He musters no evidence—affidavits, written correspondence, or otherwise—shedding light on his attorney's reasons for allegedly not pursuing the information in the files on Mr. Jarling, and the Court therefore must presume that his attorney, based on "the quantum of evidence already known to [him]," acted as a reasonable attorney would have when he decided not to further investigate Mr. Jarling as a suspect. *See Hutchinson v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002) (rejecting

---

[5] The evidence at Mr. England's trial showed that the robber wore a skull mask during the robbery. [Trial Tr. at 11:15–21, 30:9–17].

the petitioner's claim that counsel did not conduct a reasonable investigation and presuming that counsel acted reasonably when the petitioner "ha[d] presented no evidence to show that his counsel was deficient in failing to present [the evidence at issue]" and "[t]here [was] nothing in the record indicating defense counsel's reasons for not presenting this evidence"); *see also Hurley*, 10 F. App'x at 260 (recognizing that a petitioner "must *overcome* a presumption that the challenged action might be considered sound trial strategy" (emphasis added) (citation omitted))); *Kelly*, 2019 WL 2189511 at *12 (stating that "a petitioner must *rebut* the strong presumption that the challenged conduct could be considered sound trial strategy" (emphasis added) (citing *Strickland*, 466 U.S. at 688; *Guam*, 741 F.2d at 1169))).

Even if Mr. England's attorney was deficient for failing to review the federal agents' files and investigate Mr. Jarling, Mr. England's claim would still fail because he does not demonstrate that he suffered prejudice from his attorney's deficient performance. To establish prejudice, he must show that "the lack of overwhelming evidence of guilt, combined with the negative consequences of [his attorney's] failure to conduct a sufficient pre-trial investigation, sufficiently creates a reasonable probability that at least one juror would have struck a different balance had defense counsel not performed deficiently." *English v. Romanowski*, 602 F.3d 714, 730 (6th Cir. 2010). Mr. England cannot make this showing because the evidence of his guilt, though circumstantial, was indeed overwhelming. *See Johnson v. Coyle*, 200 F.3d 987, 992 (6th Cir. 2000) (stating that "[c]ircumstantial evidence alone is sufficient to support a conviction" (quotation omitted)). The United States, in its response, recites most of this evidence:

- the robber wore a "baggy" grey sweatshirt and sweatpants, and England had purchased such items while in custody shortly before the robbery;

- the robber wore a Halloween mask of the same type and style purchased by England's daughter a few months earlier but which she could not find again after the robbery;

• the robber acted as if he were left-handed, as is England,

• the robber presented a demand note with distinctive "flowy" handwriting that was identified by England's ex-wife as England's handwriting;

• the robber carried a duffle bag of the same style that England had received upon his release from federal custody less than one week before the robbery;

• the robber wore a distinctive scarf or head covering which was discarded along his flight path from the credit union, and that item belonged to England's ex-wife;

• Waddell photographed England outside the credit union minutes after the robbery;

• Waddell followed England from the credit union to a black Crown Victoria, and England later concealed that car with a tarp;

• some of the cash obtained during the robbery was found by England's daughter in England's duffle bag;

• England had another $100 bill from the robbery when booked into state custody; and

• England bragged to another inmate that he had successfully committed a bank robbery on December 10, the day the credit union was robbed.

[United States' Resp. at 8]. The United States also points out that before the robbery took place Mr. England was jobless, had no cash, and was living with his ex-wife, but soon after the robbery he paid outstanding financial obligations, purchased a car, bought his daughter an iPhone with a six-month prepaid contract, and gave his mother-in-law a one-hundred-dollar bill for Christmas. [*Id.* at 2]. In addition, the United States notes that Mr. England's DNA was found on the scarf. [*Id.* at 8]. Against the cumulative effect of all this evidence, the Court is unable to conclude that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the [trial] would have been different." *Strickland*, 466 U.S at 694. Besides, Mr. England does not allege that his attorney's error would have created a reasonable probability of a different outcome in his trial; instead, he alleges only that his attorney, by failing to fully investigate his case, did not present "favorable" information to the jury. [Pet'r's Mot. at 17]. Mr. England therefore fails

24

to establish prejudice, even if his attorney's performance was deficient to begin with, and falls well short of vaulting "*Strickland*'s high bar." *Padilla*, 559 U.S. at 371 (citations omitted).

### 7. Failure to Retain an Expert Witness

Next, Mr. England faults his attorney for not hiring an expert to refute the testimony of Alan M. Giusti, who, as a forensic examiner with the Federal Bureau of Investigation, testified that Mr. England was a "contributor" to DNA found on the scarf. [Second Trial Tr., Doc. 109, at 22:13–25, 23:1–25, 24:1–23]. In offering this testimony, Mr. Giusti relied on a statistical analysis known as a "likelihood ratio," [*id.* at 13:15–25, 14:1–8], which is "the probability that a person of interest contributed to . . . [the DNA profile found on an] item of evidence, [*id.* at 14:1–3]. Following Mr. England's conviction at trial, the FBI sent a letter to the United States Attorney's Office for the Eastern District of Tennessee, stating that "certain statements that were made by [Mr. Giusti] regarding likelihood ratios were found during the internal review to have deviated from recommended language." [FBI Letter, Doc. 1-2, at 1].

In light of this letter, Mr. England contends that his attorney was "grossly ineffective by not seeking an expert to investigate[] [and] review all documents[] [and] reports prepared by [the] FBI" and "provide independent testimony of their findings." [Pet'r's Mot. at 20]. He claims that "with the weight of this case and conviction leaning on DNA evidence . . . there is a sure possibility the jury would have reached a different verdict" if not for his attorney's failure to hire an expert to refute Mr. Giusti's testimony and report. [*Id.* at 20]. In response, the United States points out that the FBI also recognized that Mr. Giusti "'correctly phrased' the likelihood ratio 'three times' during his testimony and in his laboratory report." [United States Resp. at 8]. In addition, the United States disagrees Mr. England's statement that his conviction depended on DNA evidence and argues that the totality of the evidence supports his conviction. [*Id.*].

The problem with Mr. England's argument is that he is asking the Court to find, *in hindsight*, that his attorney rendered deficient performance based on the contents of the FBI's letter, but the Court "must judge the reasonableness of counsel's challenged conduct . . . viewed as of the time of counsel's conduct," not later. *Strickland*, 466 U.S. at 690. Rather than retain an expert to challenge Mr. Giusti's testimony, Mr. England's attorney decided to cross examine him, and this strategic decision was a perfectly reasonably one—especially since his attorney did cross examine Mr. Giusti about his reliance on likelihood ratios. [Second Trial Tr. 27:14–25, 28:1–4]; *see Esparza v. Sheldon*, 765 F.3d 615, 624 (6th Cir. 2014) (rejecting the petitioner's argument that his attorney could have "impeached [an adverse witness] more effectively by calling an expert" because "[t]his is precisely the sort of tactical judgment *Strickland* counsels against second-guessing" (citing *Strickland*, 466 U.S. at 689)); *Samatar v. Clarridge*, 225 F. App'x 366, 372 (6th Cir. 2007) ("[T]he failure to call an expert and instead rely on cross-examination does not constitute ineffective assistance of counsel. . . . even if the wisdom of such an approach is debatable." (citation and quotation omitted)).

Even if Mr. England's attorney was deficient for failing to hire an expert to refute Mr. Giusti's testimony and report, Mr. England's claim would still fail because, as the United States rightly argues, he does not demonstrate that he suffered prejudice from his attorney's deficient performance. The Court cannot agree with Mr. England's assessment that "the weight of this case and conviction lean[ed] on DNA evidence" and that "there is a sure possibility the jury would have reached a different verdict" if not for his attorney's failure to hire an expert. [Pet'r's Mot. at 20]. Again, the evidence of Mr. England's guilt, even without the DNA evidence, is overwhelming and precludes any argument that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the [trial] would have been different." *Strickland*,

466 U.S at 694. In sum, Mr. England's claim fails not only because he has not shown that his attorney's performance was deficient but also because he has not shown prejudice, and he is therefore not entitled to the extraordinary remedy of § 2255 relief.

### 8. Failure to Disclose Immunity from Prosecution

Lastly, Mr. England argues that his attorney was ineffective during cross examination of his ex-wife for failing to disclose that the United States had "grant[ed] [her] . . . immunity from prosecution." [Pet'r's Mot. at 21]. In response, the United States correctly maintains that "he has not established that [his ex-wife] was, in fact, offered such immunity, without which counsel cannot be deemed ineffective for not mentioning it." [United States' Resp. at 11]; *see Mapes*, 171 F.3d at 427 (stating that "[c]ounsel could not be unconstitutionally ineffective for failing to raise [a] meritless argument"); *see also Chapman*, 74 F. App'x at 593 (stating that an attorney "is not required by the constitution to raise frivolous defenses or arguments to avoid a charge of ineffective representation"). Mr. England, alongside his reply brief, purports to have filed a "proffer letter" in which, he says, the United States promised immunity to his ex-wife, *see* [Pet'r's Reply at 37], but this document is not a proffer letter at all but is merely the FBI's interview of Mr. England's ex-wife, and it contains no mention of an offer of immunity, *see* [Doc. 19-1 at 14–17].

Besides, even if the United States did promise immunity to Mr. England's ex-wife, Mr. England does not allege or argue that his attorney's failure to broach this promise of immunity created a reasonable probability of his acquittal, and the overwhelming evidence against him simply forecloses this argument. *See Cross v. Woods*, No. 2:12-CV-408, 2015 WL 5136006, at *12 (W.D. Mich. Sept. 1, 2015) ("[T]here was strong evidence indicating that Petitioner participated in the crimes for which he was charged. Since Petitioner has not shown that the

27

outcome of his trial would have been different if his trial attorney had cross-examined [the adverse witness] about his use immunity agreement with the prosecution, Petitioner's ineffective assistance of counsel claim fails."); *cf. Holland v. Adams*, Nos. CV 04–3407–SJO (MLG), CV 04–3416–SJO (MLG), CV 04–3491–SJO (MLG), CV 04–3502–SJO (MLG), 2007 WL 7770910, at *27 (C.D. Cal. Apr. 3, 2007) ("This Court has already determined above, under the *Brady* analysis, that there was no reasonable probability that the result of the proceeding would have been different had [the adverse witness's] immunity agreement been disclosed. Thus, Petitioners cannot establish that they were prejudiced by defense counsels' omission." (citing *Strickland*, 466 U.S. at 694)). Mr. England therefore, once again, fails to satisfy *Strickland*'s two-part test, and once again, he fails to show that he is entitled to the extraordinary remedy of § 2255 relief.

## B. Evidentiary Hearing

Although Mr. England also moves the Court for an evidentiary hearing on his claims, he is clearly not entitled to § 2255 relief, for all the reasons that the Court has stated to this point, and the Court will therefore decline to hold an evidentiary hearing. *See Smith v. United States*, 348 F.3d 545, 550 (6th Cir. 2003) (stating that if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," then an evidentiary hearing is not necessary (quoting *Fontaine v. United States*, 411 U.S. 213, 215 (1973))).

## C. Certificate of Appealability

The Court must now determine whether to issue a certificate of appealability, which is necessary for Mr. England to appeal its ruling. 28 U.S.C. § 2253(a), (c)(1)(B). The Court may issue a certificate of appealability only when a petitioner "has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). To make this showing when a court has rejected a petitioner's constitutional claims on the merits, that petitioner must demonstrate that

reasonable jurists would find the court's assessment of those claims "debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Having addressed the merits of Mr. England's claims, the Court does not conclude that reasonable jurists would find that its rejection of his claims is debatable or wrong. The Court will therefore decline to issue a certificate of appealability to Mr. England.

## IV.  CONCLUSION

As the petitioner under § 2255, Mr. England fails to satisfy his burden of establishing that his conviction and sentence were in violation of the Constitution, or that a fundamental defect resulted in a complete miscarriage of justice or an egregious error. His Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody [Doc. 1] and his Motion Requesting Evidentiary Hearing on Previously Filed Motion under § 2255 [Doc. 21] are therefore **DENIED**, and this case is hereby **DISMISSED with prejudice**. The Court will enter an order consistent with this opinion.

ENTER:

_____
s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE

Case 2:16-cr-00065-JRG-DHI   Document 151   Filed 09/30/22   Page 29 of 29   PageID #: 3998